**RELM INSURANCE LTD**
**PRIVATE COMPANY MANAGEMENT LIABILITY DECLARATIONS**

THIS POLICY'S LIABILITY COVERAGE PARTS, IF PURCHASED, ARE ON A CLAIMS MADE AND REPORTED BASIS AND COVER ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR, IF THE EXTENDED REPORTING PERIOD. CLAIM EXPENSES SHALL REDUCE THE LIMIT EXERCISED, OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS AND SHALL ALSO BE APPLIED AGAINST THE APPLICABLE RETENTION.

PLEASE READ THE ENTIRE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

**ITEM 1.**

| NAMED INSURED AND ADDRESS | INSURER |
|---|---|
| Compute North Holdings, Inc.<br>7575 Corporate Way<br>Eden Prairie, MN 55375 | Relm Insurance Ltd.<br>Phase 1 Washington Mall, Suite 202<br>20 Church Street<br>Hamilton HM 11, Bermuda |
| **POLICY NUMBER** | **Broker** |
| RILPDOA5992022 | Michael Keyes<br>Aon Plc<br>Point House 6 Front Street<br>Hamilton HM 11 \| Bermuda |

**ITEM 2.**    **Combined Aggregate Limit of Liability for All Coverage Parts:** $5,000,000

**ITEM 3.**    **Policy Period:**  From: September 22, 2022  To: September 22, 2023
12:01 AM Local Time at the Address of the Insured Show Above

**ITEM 4.**    **Extended Reporting Period:** 6 years included in Annualized Premium

    A.  1-year    of Annualized Premium in Item 7 Below
    B.  2-Year    of Annualized Premium in Item 7 Below
    C.  3-Year    of Annualized Premium in Item 7 Below

**ITEM 5.**    **Run-Off Coverage Period: N/A**

    A.  1-year    % of Annualized Premium in Item 7 Below
    B.  3-Year    % of Annualized Premium in Item 7 Below
    C.  6-Year    % of Annualized Premium in Item 7 Below

**ITEM 6.**    **Notice to Insurer:**  See attached ESIS ProClaim

**ITEM 7.**    **Policy Premium:** USD 315,000

Litigation Trustee's Exhibit 003

**ITEM 8.          COVERAGE SCHEDULE**

If any of the coverages described below are left blank or "N/A" is indicated, such coverage including any Coverage Part, Limit of Liability, Sublimit of Liability or Additional Limit, and any other reference thereto is deleted from the policy.

**Directors and Officers Liability Coverage Part**

| | Limit | Retention |
|---|---|---|
| **Policy Aggregate** | $5,000,000 | |
| **Side A – Insured Person Liability** | Covered | Nil |
| **Side B – Company Reimbursement** | Not Covered | Not Applicable |
| **Side C – Company Liability** | Not Covered | Not Applicable |
| **Side D – Derivative Demand Investigation Cost** | Not Covered | Not Applicable |
| **Coverage Enhancements** | | |
|    a.  **Pre-claim Expenses** | Not Covered | Nil |
|    b.  **Pre-tender Cost Coverage** | Not Covered | Nil |
|    c.  **Executive Protection Coverage** | Not Covered | Nil |
|    d.  **Outside Position Coverage** | Not Covered | Nil |
|    e.  **Additional Side A Limit of Liability** | Not Covered | Nil |
|    f.  **Public Offering/Initial Coin Offering** | Not Covered | Nil |
| **Retroactive Date:** | September 22, 2022 | |
| **Prior and Pending:** | September 22, 2022 | |

| | |
|---|---|
| **Employment Practices Liability Coverage Part:** | N/A |
| **Fiduciary Liability Coverage Part:** | N/A |
| **Commercial Crime Coverage Part:** | N/A |
| **Cyber Coverage Part:** | N/A |
| **Employment Practices Liability Coverage Part:** | N/A |
| **Miscellaneous Professional Liability Coverage Part:** | N/A |
| **Kidnap and Ransom:** | N/A |

**ITEM 9. DESCRIPTION OF PROFESSIONAL SERVICES:**
      **(only applicable if MPL Coverage Part is purchased)**

**ITEM 10. FORMS AND ENDORSEMENTS APPLICABLE TO THIS POLICY**

| | |
|---|---|
| RILCWF001A10120 | Privacy Company Declaration Page |
| RILCWF010A10120 | General Terms and Conditions |
| RILCWF011A10120 | Directors and Officers Liability Coverage Part |
| RILCWF3501A10120 | Sanction Limitation and Exclusion Clause |
| RILPDO2025 | Premium Payment Clause – 30 Days |
| RILCWF419A10120 | Terrorism, War, Civil War Exclusion |

In witness whereof, this policy has been made, entered into and executed by the undersigned in Hamilton Bermuda this November 09, 2022.

Trevor Nelson
Authorized Representative

Litigation Trustee's Exhibit 003

**RELM INSURANCE LTD PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**
**GENERAL TERMS AND CONDITIONS**

**SECTION I – TERMS AND CONDITIONS**

This Policy is comprised of these General Terms and Conditions, the Declarations, various Coverage Parts and endorsements, if applicable, and the **Application**. Although various Coverage Parts may be referenced in this Policy, a Coverage Part is included within this Policy and affords coverage only if that Coverage Part is designated as being purchased in the Coverage Schedule in ITEM 8 of the Declarations.

Except for these General Terms and Conditions or unless stated to the contrary in any Coverage Part or endorsement, the terms and conditions of each Coverage Part of this Policy apply only to that Coverage Part and shall not apply to any other Coverage Part of this Policy. Any defined term referenced in the General Definitions but defined in a Coverage Part shall, for purposes of coverage under that Coverage Part, have the meaning set forth in that Coverage Part. If any provision in the General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of that Coverage Part. The descriptions in the headings of the General Terms and Conditions or any Coverage Part are solely for convenience and form no part of the terms and conditions of coverage.

**SECTION II - GENERAL DEFINITIONS**

The following **Definitions** shall have the same meaning throughout this Policy:

**A.** **Application** means all written materials and information, including all signed applications and any materials attached thereto or incorporated therein, submitted by or on behalf of the **Insureds** to the Insurer in connection with the underwriting of this Policy. The **Application** is deemed attached to and incorporated into this Policy.

**B.** **Change in Control** means the occurrence of either of the following during the **Policy Period**:

1. the **Named Insured**: (i) sells all or substantially all of its assets to any other person or entity or affiliated group of persons or entities, or (ii) merges or consolidates with another entity such that the **Named Insured** is not the surviving entity; or

2. any person, entity or affiliated group of persons or entities acquires:

   a. an ownership interest of the **Named Insured** representing more than fifty percent (50%) of the power to manage or control the **Named Insured**, including the power to elect, appoint or designate a majority of the board of directors or equivalent executives of such entity; or

   b. the right pursuant to written contract or the by-laws, charter, operating agreement or similar documents of the **Named Insured** (including a limited liability company or joint venture) to elect, appoint or designate a majority of the board of directors or equivalent executives of the **Named Insured**.

**C.** **Claim** means, with respect to any **Liability Coverage Part**, those matters defined as a **Claim** in such Coverage Part.

**D.** **Claim Expenses** means that part of **Loss** consisting of reasonable fees (including attorneys' fees and experts' fees) and expenses incurred by the **Insureds** (other than wages, salaries, fees, benefits or overhead associated with any **Insured**) (i) in the investigation, defense or appeal of a **Claim**, including the premium for appeal, attachment or similar bonds (without any obligation by the Insurer to apply for or furnish such bonds), or (ii) at the Insurer's request to assist the Insurer in investigating a **Claim**.

**E.** **Clean-Up Costs** means any amount incurred to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants.**

**F.** **Company** means, collectively, the **Named Insured** and its **Subsidiaries**, including any such organization as a debtor in possession under United States Bankruptcy law or an equivalent status under the law of any other country.

**G.** **Coverage Event** means, with respect to a **Non-Liability Coverage Part**, the event or loss which must occur or be discovered in order to invoke coverage under such **Coverage Part**.

RILCWF010A10120

1

Litigation Trustee's Exhibit 003

**H.   Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Company**.

**I.   Employee** means the following:

1.   any natural persons who were, now are or shall be in the regular service of the **Company** in the ordinary course of the **Company's** business, regardless whether such natural person is in a supervisory, co-worker or subordinate position or otherwise, and including any such natural persons who are leased, temporary, part-time or seasonal employees of the **Company**; and

2.   any volunteers or interns of the **Company**; in their capacity as such;

provided (i) any such natural person who is leased to the **Company** shall qualify as an Employee only if the **Company** agrees in writing to indemnify such natural person, and (ii) coverage for any such leased employees shall be specifically excess of any indemnification or insurance otherwise available to such leased employees from the applicable leasing company or any other source.

**J.   Enforcement Unit** means any federal, state, local or foreign law Enforcement Unit or other investigative, administrative, regulatory or governmental authority (including but not limited to, the U.S. Department of Justice, the U.S. Securities and Exchange Commission or any attorney general), or the enforcement unit of any securities or commodities exchange or similar self-regulatory organization (including, but not limited to, the New York Stock Exchange, NASDAQ and the American Stock Exchange).

**K.   ERISA** means the Employee Retirement Income Security Act of 1974, and as amended, and any similar foreign, state or local law, statute, rule or regulation.

**L.   Executive Officer** means with respect to any **Company** the natural persons who were, now are or shall become such **Company's** chief executive officer, chief financial officer, in-house general counsel or the functional equivalent of any of the foregoing positions, or with respect to coverage under the Employment Practices Liability Coverage Part, the head of human resources.

**M.   Extended Reporting Period** means the period set forth in ITEM 4.B of the Declarations for the extended coverage under the **Liability Coverage Parts**, as described in Section XIV of these General Terms and Conditions.

**N.   Extradition** means any formal process by which an **Insured Person** located in any foreign or domestic jurisdiction is or is sought to be surrendered to any other foreign or domestic jurisdiction for trial, or otherwise to answer any criminal accusation, for a **Wrongful Act**.

**O.   Financial Impairment** means the status of the **Company** resulting from:

1.   the appointment of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the **Company**, or

2.   the **Company** becoming a debtor in possession, as defined under U.S. Bankruptcy law or equivalent foreign law.

**P.   Foreign Jurisdiction** means any jurisdiction, other than the United States or any of its territories or possessions.

**Q.   Foreign Policy** means the standard insurance policy (including all mandatory endorsements, if any) approved by the Insurer for use within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded by the applicable Coverage Part under this Policy, but shall not include any commercial general liability, property or similar insurance policy.

**R.   Insured Persons** means with respect to each Coverage Part the natural persons defined as **Insured Persons** in such **Coverage Part**.

**S.   Insureds** means with respect to each Coverage Part the entities, plans and natural persons defined as **Insureds** in such Coverage Part.

Litigation Trustee's Exhibit 003

**T.** **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of related facts, circumstances, situations, events, transactions or causes.

**U.** **Liability Coverage Part** means any of the following: Directors and Officers Liability Coverage Part, Employment Practices Liability Coverage Part, Fiduciary Liability Coverage Part, Cyber Coverage Part, Employed Lawyers Liability Coverage Part, or Miscellaneous Professional Liability Coverage Part, if purchased as set forth in the Coverage Schedule in ITEM 8 of the Declarations.

**V.** **Loss** means:

   1. with respect to any **Liability Coverage Part**, the amounts defined as **Loss** in such Coverage Part; and

   2. with respect to any **Non-Liability Coverage Part**, the amounts covered under such Coverage Part.

**W.** **Manager** means any natural person who is a former, present or future manager, managing member, general partner or member of the board of managers or equivalent executive of a **Company** that is a limited liability company or limited partnership.

**X.** **Non-Indemnifiable Loss** means **Loss** incurred by an **Insured Person** for which the **Company** is not permitted by common or statutory law to indemnify or is not financially able to indemnify by reason of **Financial Impairment**.

**Y.** **Non-Liability Coverage Part** means the Crime **Coverage Part** and the Kidnap and Ransom Coverage Part, if purchased.

**Z.** **Named Insured** means the organization designated in ITEM 1 of the Declarations.

**AA.** **Personal Injury** means libel, slander, disparagement, defamation, invasion of privacy, invasion of right of publicity, wrongful entry, wrongful detention, wrongful eviction, false imprisonment, false arrest, malicious prosecution, malicious use or abuse of process, assault, battery, loss of consortium, or any violation of a federal, state or local statutory or common law, rule or regulation involving the unsolicited electronic dissemination of faxes, emails, texts, or other communications by or on behalf of a **Company** to any actual or prospective customers of a **Company** or any other third party, including but not limited to the Telephone Consumer Protection Act, the United States of America CAN-SPAM Act of 2003, the Junk Fax Prevention Act of 2005, and any amendments thereto, or any similar federal, state or local statutory or common law, rule or regulation.

**BB.** **Plans** mean the plans and programs defined as **Plans** in the Fiduciary Liability Coverage Part, if purchased.

**CC.** **Policy Period** means the period set forth in ITEM 3 of the Declarations, subject to prior termination in accordance with Section XX (Cancellation and Nonrenewal) of these General Terms and Conditions.

**DD.** **Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or a state, county, municipality or locality counterpart thereof. **Pollutants** also means any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, silica, noise, fungus (including mold, mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi, but not any fungi intended by the **Insured** for consumption) and electric or magnetic or electromagnetic field. Such matters shall include, without limitation, solids, liquids, gaseous, thermal, biological, nuclear or radiological irritants, contaminants or smoke, soot, fumes, acids, alkalis, chemicals or waste materials.

**EE.** **Run-Off Coverage Period** means the period set forth in ITEM 5 of the Declarations for the Run-Off Coverage Period under the **Liability Coverage Parts**, as described in Section X.C of these General Terms and Conditions.

**FF.** **Subsidiary** means:

   1. any organization in which more than fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of directors or equivalent position is owned, in any combination, by one or more **Companies**;

Litigation Trustee's Exhibit 003

2. any organization in which one or more **Companies**, in any combination, have the right, pursuant to a written contract with or the by-laws, charter, operating agreement or similar document of such organization, to elect or appoint a majority of the directors or equivalent position of such organization;

3. any organization in which exactly fifty percent (50%) of the outstanding securities or voting rights representing the present right to vote for the election of directors or equivalent positions is owned, in any combination, by one or more **Companies**, if one or more **Companies** solely controls the management and operation of such organization pursuant to a written contract with the owners of the remaining fifty percent (50%) of such securities or voting rights;

4. any foundation, charitable trust or political action committee controlled or exclusively sponsored by one or more **Companies**; and

5. any other not-for-profit organization exclusively sponsored by one or more **Companies**.

GG. **Wage and Hour Law** means any state, local or foreign statutory or common law (including, but not limited to the Fair Labor Standards Act or Wage Payment and Collection Act), or any amendments thereto, or rule or regulations promulgated thereunder governing wage, hour and payroll policies and practices (except the Equal Pay Act) including, but not limited to:

1. the refusal, inability or failure of an **Insured Entity** or **Insured Person** to pay wages or overtime pay, off-the-clock work, on-call time compensation, compensation for waiting time and dressing time, minimum wage compensation, reimbursement of expenses or any amounts representing such wages or pay or expenses, for services rendered or time spent in connection with work related activities;

2. improper pay deductions taken by an **Insured Entity** or **Insured Person** from any employee or purported employee, including but not limited to garnishments and withholdings;

3. improper classification of any employee or purported employee or improper or failure to maintain accurate records;

4. child labor;

5. pay equity or comparable worth;

6. failure to provide or enforce any legally required rest or meal breaks; or any similar practices, policies, or procedures.

HH. **Wrongful Acts** means, with respect to any **Liability Coverage Part**, the acts, errors, omissions and other matters defined as **Wrongful Acts** in such **Coverage Part**.

### SECTION III – NOTICE

A. Solely with respect to any **Liability Coverage Part**:

1. *Notice of Claim*: The **Insureds** shall give to the Insurer written notice of any **Claim** made against an **Insured** as soon as practicable after an **Executive Officer** or risk manager of a **Company** or the functional equivalent of either of the foregoing, first learns of such **Claim**, but in no event later than (i) thirty (30) days after expiration of the **Policy Period**, or (ii) the expiration of the **Extended Reporting Period**, if exercised. The failure of the **Insureds** to provide notice of a **Claim** as soon as practicable as required by this Section III.A.1 shall not constitute a coverage defense with respect to such **Claim** unless the Insurer establishes it was materially prejudiced by such failure.

2. *Notice of Inquiry/Fiduciary Inquiry/Voluntary Compliance Program Notice*: If an **Insured** elects to seek coverage for an **Inquiry**, **Fiduciary Inquiry** or a **Voluntary Compliance Program Notice**, the **Insured** shall give notice of such Inquiry, **Fiduciary Inquiry** or **Voluntary Compliance Program Notice** to the Insurer no later than thirty (30) days after the expiration of the **Policy Period** or **Extended Reporting Period**, if exercised.

3. *Notice of Circumstances*: If during the **Policy Period** or the Extended Reporting Period, if exercised, the **Insured** first becomes aware of circumstances that could give rise to a **Claim** against the **Insureds** and give written notice of such circumstances to the Insurer during the **Policy Period** or the Extended Reporting

Litigation Trustee's Exhibit 003

Period, if exercised, then any **Claims** subsequently arising from such circumstances shall be considered to have been made during the **Policy Period**. Except as otherwise provided in the Directors and Officers **Liability Coverage Part**, no coverage is afforded under any **Liability Coverage Part** for fees, expenses or other loss incurred in connection with such circumstances prior to the time a **Claim** is actually made and reported to the Insurer.

The **Insureds** shall include with any such notice of circumstance a description of the circumstances, the nature of any potential **Wrongful Act(s)**, the nature of the alleged or potential damage, the names of actual or potential claimants, and the manner in which the **Insureds** first became aware of the circumstances.

**B.**   Solely with respect to any **Non-Liability Coverage Part**, as a condition precedent to their rights under such **Coverage Part**, the **Insureds** shall give to the Insurer written notice of any **Coverage Event** pursuant to the applicable notice provision in such **Non-Liability Coverage Part**.

**C.**   Except as otherwise provided in this Policy, all notices under any provision of this Policy shall be in writing and given by prepaid express courier, certified mail, email or fax properly addressed to the appropriate party. Notice to the **Insureds** may be given to the **Named Insured** at the address as shown in ITEM 1 of the Declarations. Notice to the Insurer shall be given to the respective address shown in ITEM 6 of the Declarations. Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee or in the case of courier, email or fax, one day following the date such notice is sent, whichever earlier, subject to proof of transmittal.

## SECTION IV – LIMITS OF LIABILITY

### A.   COMBINED AGGREGATE LIMIT OF LIABILITY

The amount set forth in ITEM 2 of the Declarations shall be the Insurer's maximum aggregate liability for all **Loss** covered under all **Liability Coverage Parts**, combined.

The Insurer's maximum liability under the **Non-Liability Coverage Parts** shall be the respective Limits of Liability as set forth in the respective **Coverage Part** Declarations, if any. Such Limits of Liability will be applied as described in the respective **Non-Liability Coverage Part**.

### B.   EACH LIABILITY COVERAGE PART LIMIT OF LIABILITY

The respective Aggregate Limit of Liability for each **Liability Coverage Part**, as set forth in the Coverage Schedule in ITEM 8 of the Declarations, shall be the Insurer's maximum aggregate liability for all **Loss** on account of all **Claims** under each such **Liability Coverage Part**. The Limit of Liability for each **Liability Coverage Part** shall be part of and not in addition to, the Combined Aggregate Limit of Liability as set forth in ITEM 2 of the Declarations.

### C.   SHARED LIABILITY COVERAGE PART LIMIT OF LIABILITY

If the Aggregate Limit(s) of Liability for more than one Coverage Part is selected to be a Shared Limit in ITEM 8 of the Declarations, then: (i) the Aggregate Limit of Liability for each shared Coverage Part shall be the maximum liability of the Insurer for all **Loss** arising from all **Claims** under such shared Coverage Parts, (ii) any **Loss** paid under one shared Coverage Part shall reduce the Aggregate Limit of Liability for all other shared Coverage Parts, and (iii) in no event shall the maximum liability of the Insurer for all **Loss** arising from all **Claims** under all Shared Coverage Parts, collectively, exceed the highest Aggregate Limit of Liability applicable to such Coverage Parts that have a Shared Limit. Such Shared Limit of Liability shall be part of and not in addition to the Combined Aggregate Limit of Liability as set forth in ITEM 2 of the Declarations. This paragraph further limits the Insurer's maximum liability under each such **Liability Coverage Part** and does not increase the respective separate Aggregate Limit of Liability for each **Liability Coverage Part**.

### D.   LIABILITY UNDER MULTIPLE COVERAGE PARTS

If a single **Claim** (as described in Section VI below) is covered in whole or in part under more than one **Liability Coverage Part**, the applicable Aggregate Limits of Liability under each such **Liability Coverage Part** shall apply with respect to coverage for such **Claim** under such **Liability Coverage Part**, provided the Insurer's maximum aggregate liability for all **Loss** covered under all such **Liability Coverage Parts**, combined, on account of such **Claim** shall not exceed the largest of such applicable Aggregate Limits of Liability which shall be reduced by payment of **Loss**.

Litigation Trustee's Exhibit 003

### E. COORDINATION OF COVERAGE

Any **Loss** covered under more than one **Liability Coverage Part** including the Cyber Coverage Part, shall first be covered under the Cyber Coverage Part, subject to its terms, conditions and limitations. Any remaining portion of such **Loss** which is not paid under the Cyber Coverage Part shall then be covered under the Employment Practices Liability Coverage Part, if applicable, subject to its terms, conditions and limitations. Any remaining portion of such **Loss** otherwise covered under any other applicable Liability Coverage Part which is not paid under the Cyber Coverage Part or Employment Practices Liability Coverage Part shall be covered under such other **Liability Coverage Part**, subject to the terms, conditions and limitations of such **Liability Coverage Part**.

Any **Loss** covered under the Cyber Coverage Part and the Kidnap and Ransom Coverage Part shall be first covered under the Kidnap and Ransom Coverage Part, subject to its terms, conditions and limitations. Any remaining portion of such **Loss** otherwise covered under the Cyber Coverage Part which is not paid under the Kidnap and Ransom Coverage Part shall be covered under the Cyber Coverage Part, subject to its terms, conditions and limitations.

### F. SUBLIMITS OF LIABILITY

Except as otherwise indicated, any Sublimit of Liability set forth in any Coverage Part shall be part of and not in addition to, the respective Aggregate Limit of Liability for that Coverage Part. No retention shall apply to any **Loss** which is subject to a Sublimit of Liability unless otherwise specifically indicated in the Declarations, the Policy and/or any endorsements thereto.

### G. CLAIM EXPENSES WITHIN LIMIT OF LIABILITY

Except as otherwise provided, **Claim Expenses** are part of and not in addition to the Limits of Liability applicable to the **Liability Coverage Parts**, and the payment by the Insurer of **Claim Expenses** reduces such Limits of Liability.

### H. LIMIT OF LIABILITY EXHAUSTION AND PAYMENT

If the applicable Limit of Liability under this Policy is exhausted by payment of **Loss**, the Insurer's obligations, including without limitation any duty to defend, shall be completely fulfilled and extinguished. Except with respect to Section XIX of these General Terms and Conditions (Payment Priority), the Insurer is entitled to pay **Loss** as it becomes due and payable by the **Insureds**, without consideration of other future payment obligations.

## SECTION V – RETENTION

### A. RETENTIONS FOR LIABILITY COVERAGE PARTS

The Insurer's liability under the **Liability Coverage Parts** with respect to **Loss** on account of each **Claim** shall apply only to that part of **Loss** which is excess of the applicable Retention set forth in the Coverage Schedule in ITEM 8 of the Declarations. If more than one Retention applies to a single **Claim**, the largest applicable Retention shall apply to such **Claim**. The retention shall be uninsured under this Policy. The Insurer shall recognize payment of any applicable retention by the **Insured**, any Side A Excess DIC Insurer and/or by any other source.

If a **Company** refuses or fails within sixty (60) days after an **Insured Person's** request to indemnify or advance covered **Loss** or if a **Company** is unable to indemnify or advance covered **Loss** due to its **Financial Impairment**, the Insurer shall pay such covered **Loss** without applying the applicable Retention. If the Insurer pays under this Policy any **Loss** incurred by an **Insured Person** for which the **Company** is legally permitted or required and is financially able to advance or indemnify, then the **Company** shall reimburse the Insurer for such amounts up to the applicable Retention, and such amounts shall become due and payable as a direct obligation of the **Company** to the Insurer.

### B. DEDUCTIBLES FOR NON-LIABILITY COVERAGE PARTS

The Insurer's maximum liability and the applicable Deductible under the **Non-Liability Coverage Parts** shall be the respective Limits of Liability and Deductible amounts as set forth in the respective **Coverage Part**

Litigation Trustee's Exhibit 003

Declarations, if any. Such Limits of Liability and Deductible amounts will be applied as described in the respective **Non-Liability Coverage Part**.

## SECTION VI – SINGLE CLAIMS

All **Claims** under the **Liability Coverage Parts** which arise out of the same **Wrongful Act** or Interrelated **Wrongful Act** shall be deemed one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made against any **Insured**, regardless of whether such date is before or during the **Policy Period**. In no event shall a single lawsuit or proceeding constitute more than one **Claim**.

If a single **Claim** is covered in whole or in part under more than one **Liability Coverage Part**, the applicable Retention under each such **Liability Coverage Part** shall be applied with respect to coverage for such **Claim** under such **Liability Coverage Part**, provided the sum of all applicable Retentions under all such **Liability Coverage Parts** shall not exceed the largest of such applicable Retentions.

## SECTION VII – DEFENSE AND SETTLEMENT

**A.** *Duty to Defend Coverage*: If duty to defend coverage is selected with respect to any **Liability Coverage Part** as designated in the Coverage Schedule in ITEM 8 of the Declarations, the Insurer shall have the right and duty to defend any **Claim** covered under such **Liability Coverage Part**, even if any of the allegations are groundless, false or fraudulent. The Insurer's duty to defend any **Claim** shall cease upon exhaustion of the Limit of Liability applicable to such **Claim**.

**B.** *Non-Duty to Defend Coverage*: If non-duty to defend coverage is selected with respect to any **Liability Coverage Part** as designated in the Coverage Schedule in ITEM 8 of the Declarations, it shall be the duty of the **Insureds** and not the duty of the Insurer to defend any **Claim** covered under such **Liability Coverage Part**.

**C.** *Optional Duty to Defend*: If Optional duty to defend is selected with respect to any **Liability Coverage Part**, as designated in the Coverage Schedule in ITEM 8 of the Declarations, then the **Insured** shall have the right to tender the defense of a **Claim**, on behalf of all **Insureds** to the Insurer. Such tender must be noticed in writing by the **Insured** to the Insurer within thirty (30) days of the **Insured's** first reporting of the **Claim** pursuant Section III.A.1 above. If the **Insured** does not tender the defense, then it shall be the duty of the **Insureds** and not the duty of the Insurer to defend any **Claim** covered under such **Liability Coverage Part** and the Advancement of **Claim** Expenses referenced in Section VII.E below, shall apply.

Furthermore, from the date the **Claim** is first made against an **Insured** to the date when the Insurer accepts the tender of the defense of such **Claim**, the **Insureds** shall take no action, or fail to take any required action, that prejudices the rights of any **Insured** or the Insurer with respect to such **Claim**. The assumption of the defense of the **Claim** shall be effective upon written confirmation sent by the Insurer to the **Named Insured**.

**D.   Multiple Coverage Part Defense**

If a **Claim** is subject to coverage under more than one **Liability Coverage Part** and the **Insured** has not selected in ITEM 8 of the Declarations either Duty to Defend or Non-Duty to Defend for all such **Liability Coverage Parts**, then the **Insured** shall select either *Duty to Defend or Non-Duty to Defend* as referenced above, to apply with respect to the defense of the entire **Claim**. The **Insured** shall notify the Insurer of its selection within thirty (30) days of the **Insured's** first reporting of the **Claim** pursuant to Section III.A.1 of the Policy. If the **Insured** does not notify the Insurer of its selection within the thirty (30) day time frame then it shall be the duty of the **Insureds** and not the duty of the Insurer to defend the **Claim**.

**E.   Advancement of Claim Expenses**

Solely with respect to *Non-Duty to Defend* coverage referenced in Section VII.B above, the Insurer shall advance covered **Claim Expenses** within forty-five (45) days after the receipt by the Insurer of properly detailed **Claim Expenses** invoices. Any advancement of covered **Claim Expenses** shall be repaid to the Insurer by the **Insureds** severally according to their respective interests if and to the extent it is later determined the **Insureds** shall not be entitled under the terms and conditions of this Policy to coverage for such **Claim Expenses**.

**F.   With respect to any Liability Coverage Part:**

1.   The **Insureds** agree not to offer to settle or settle any **Claim**, incur any **Claim Expenses** or otherwise assume any contractual obligation, admit any liability or stipulate to any judgment with respect to any **Claim**

Litigation Trustee's Exhibit 003

without the Insurer's prior written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for or as a result of any offer to settle, settlement, **Claim** Expenses, assumed obligation, admission or stipulated judgment to which it has not given its prior consent;

Provided, however, if the **Insured** is able to fully and finally settle all **Claims** in their entirety, which are subject to a single retention, for an aggregate amount including **Claim** Expenses not exceeding fifty percent (50%) of such retention, the Insurer's consent will not be required for the settlement of such **Claims**.

2.  The Insurer shall have the right and shall be given the opportunity to make any investigation it deems necessary and to effectively associate with the **Insureds** in the investigation, defense and settlement, including but not limited to the negotiation of a settlement, of any **Claim** that is or reasonably could be covered in whole or in part by the **Liability Coverage Part**.

3.  The Insurer may, with the consent of the **Insured**, make any settlement of any **Claim** covered under a **Liability Coverage Part** which the Insurer deems appropriate.

## SECTION VIII – ALLOCATION

Subject to this Section VIII, if in any **Claim** under a **Liability Coverage Part** the **Insureds** incur both **Loss** covered by this Policy and loss not covered by this Policy either because the **Claim** against the **Insureds** includes both covered and uncovered matters or because the **Claim** is made against both **Insureds** who are afforded coverage for such **Claim** and others, including **Insureds,** who are not afforded coverage for such **Claim**, the **Insureds** and the Insurer shall use their best efforts to allocate such amount between covered **Loss** and uncovered loss based upon the relative legal and financial exposures of the parties to covered and uncovered matters and covered and uncovered parties.

Provided, however, with respect to any **Liability Coverage Part**, if *Duty to Defend* coverage is selected, or the defense is tendered to the Insurer pursuant to Section VII above, then one hundred percent (100%) of any **Claim Expenses** shall be allocated to covered **Loss** under such **Liability Coverage Part**.

In any arbitration, suit or other proceeding among the Insurer and the **Insureds** or the **Company**, no presumption shall exist concerning what is a fair and proper allocation between covered **Loss** and uncovered loss.

## SECTION IX – COOPERATION

With respect to all **Coverage Parts**, the **Insureds** agree to provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and agree that in the event of a **Claim** or **Coverage Event**, the **Insureds** will do nothing that shall prejudice the Insurer's position or its potential or actual rights of recovery. The failure of any **Insured** to comply with this Section IX shall not be imputed to or create a coverage defense under this Policy with respect to any other **Insured Person**.

## SECTION X – CHANGES IN EXPOSURE

### A.  NEW ORGANIZATIONS OR PLANS

If before or during the **Policy Period** the **Company** acquires or creates a new Subsidiary or a new **Plan** or acquires an entity by merger or consolidation, coverage under this Policy shall automatically apply to the new organization or **Plan** and its **Insureds**, provided such coverage shall apply only:

1.  with respect to any **Liability Coverage Part**, solely for **Claims** for **Wrongful Acts** taking place after such acquisition or creation;

2.  with respect to the Crime Coverage Part, solely after the effective date of such acquisition subject to Section X - Liability For Prior **Losses** of the Crime Coverage Part;

This Section X.A does not apply to, and no coverage is afforded under, this Policy for any **Subsidiary** acquired during the **Policy Period** and its **Insureds** if such **Subsidiary** is a registered issuer of securities pursuant to the Securities Exchange Act of 1934, as amended, unless the Insurer agrees by endorsement to this Policy to afford coverage for such **Subsidiary** and its **Insureds**.

### B.  ACQUISITION OF NAMED INSURED

Litigation Trustee's Exhibit 003

In the event of a **Change in Control** coverage under this Policy shall continue until the termination of this Policy, provided such coverage shall apply only with respect to **Claims** for **Wrongful Acts** (under a **Liability Coverage Part**) or a Coverage Event (under a **Non-Liability Coverage Part**) taking place prior to such **Change in Control**. The entire premium for this Policy shall be deemed fully earned as of the effective date of such **Change in Control**.

## C. RUN-OFF PURCHASE OPTION

In the event of a **Change in Control** during the **Policy Period**, the **Named Insured** shall have the right, upon payment of the additional premium set forth in ITEM 5 of the Declarations, to an extension of coverage granted by the **Liability Coverage Parts** for the Run-Off Coverage Period set forth in ITEM 5 of the Declarations, which shall commenced as of the effective date of the **Change in Control** ("Run-Off Period").

This extension of coverage shall apply: (i) to any **Claim** deemed first made during the Run-Off Period but only for **Wrongful Acts** taking place prior to the effective date of the Run-Off Period, and (ii) only to coverage provided under the **Liability Coverage Part**s selected in ITEM 8 of the Declarations. The **Named Insured** shall have the right to elect only one of the Run-Off Coverage Periods referenced in ITEM 5 of the Declarations.

If the **Named Insured** elects to purchase a Run-off Period, they shall submit to the Insurer: (i) a written request to purchase the Run-Off Period, and (ii) payment of the additional premium for such Run-Off Period, no later than thirty (30) days following the effective date of such **Change in Control**. The premium paid for the Run-Off Period shall be deemed fully earned at the inception of the Run-Off Period.

This extension of coverage shall in no way increase the Insurer's Aggregate Limit of Liability under the **Liability Coverage Part(s)** selected or the Insurer's Combined Aggregate Limit of Liability under the Policy. If a Run-Off Period is purchased, Sections XIV (Extended Reporting Period) and XX (Cancellation and Nonrenewal) shall be deleted.

## D. CESSATION OF SUBSIDIARIES

If before or during the **Policy Period** an organization ceases to be a **Subsidiary**, coverage with respect to such **Subsidiary** and its **Insureds** shall continue until termination of this Policy, provided such coverage shall apply (i) with respect to any **Liability Coverage Parts**, only with respect to **Claims** for **Wrongful Acts** taking place prior to the date such organization ceased to be a Subsidiary, and (ii) with respect to any **Non-Liability Coverage Part**, only with respect to Coverage Events taking place prior to the date such organization ceased to be a **Subsidiary**.

## E. CESSATION OF PLANS

If before or during the **Policy Period** a **Plan** is terminated, coverage for such **Plan** and its **Insureds** under the Fiduciary **Liability Coverage Part**, if purchased, shall continue until termination of such **Coverage Part** with respect to **Wrongful Acts** taking place prior to the termination of such **Plan**.

## SECTION XI – REPRESENTATIONS, SEVERABILITY AND NON-RESCINDABLE COVERAGES

## A. REPRESENTATIONS

The **Insureds** represent and acknowledge that the statements and information contained in the **Application** are true and accurate, and are the basis of this Policy and are to be considered incorporated into and constituting a part of this Policy. This Policy is issued in reliance upon the truth and accuracy of such representations.

## B. SEVERABILITY

The **Application** shall be construed as a separate application for coverage by each of the **Insureds**. If with respect to any **Coverage Part** the **Application** contains any misrepresentation or omission which materially affects either the acceptance of the risk or the hazard assumed by the Insurer under such **Coverage Part**, then the Insurer shall not be liable under such **Coverage Part** to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** based upon, arising out of or attributable to the facts that were not truthfully and accurately disclosed in the **Application** to the extent such **Loss** is incurred by:

1.  any **Insured Person** who knew the facts that were not truthfully disclosed in the **Application**;

Litigation Trustee's Exhibit 003

2.   any **Company** that grants indemnification to an **Insured Person** who knew the facts that were not truthfully disclosed in the **Application**; and

3.   any **Company** or Plans if an **Executive Officer** of such **Company** knew the facts that were not truthfully disclosed in the **Application**; whether or not such **Executive Officer** or **Insured Person** knew the **Application** contained such misrepresentation or omission. No knowledge of one **Insured Person** shall be imputed to any other **Insured Persons** for purposes of this Section XI.

## C.   NON-RESCINDABLE POLICY

The Insurer shall not have the right to rescind or void this Policy or any Coverage Part, in whole or in part, for any reason.

## SECTION XII – PRESUMPTIVE INDEMNIFICATION

The **Named Insured** and any other **Company** agree to indemnify the **Insured Persons**, including the advancement of **Claim Expenses** incurred by the **Insured Persons** to the fullest extent permitted by law or the functional or foreign equivalent.

## SECTION XIII – OTHER INSURANCE

Solely with respect to any **Liability Coverage Part**, if any **Loss** resulting from any **Claim** is **Insured** by any other valid and collectible insurance issued to any **Insured**, then this Policy shall apply only excess of the amount of any deductibles, retentions and limits of liability under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this Policy. However, this Policy shall apply on a primary basis with respect to (i) any personal umbrella or other personal liability policy available to an **Insured Person**, or (ii) any private equity or venture capital liability, general partner liability or other similar management or professional liability insurance policy available to an **Insured Person**.

## SECTION XIV - EXTENDED REPORTING PERIOD

If the Insurer or the **Named Insured** terminates or refuses to renew this Policy other than for nonpayment of premium, the **Insureds** shall have the right, upon payment of the additional premium set forth in ITEM 4. A of the Declarations, to an extension of the coverage granted by the **Liability Coverage Parts** for the **Extended Reporting Period** set forth in ITEM 4. B of the Declarations following the effective date of termination or nonrenewal, but only with respect to any **Wrongful Act** taking place prior to the effective date of such termination or nonrenewal. This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due, is given by the **Insureds** to the Insurer within thirty (30) days following the effective date of termination or nonrenewal. The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew.

The entire additional premium for the **Extended Reporting Period** shall be deemed fully earned at the inception of the **Extended Reporting Period**.

The Limit of Liability for the Extended Reporting Period shall be part of and not in addition to the applicable Limits of Liability for the **Policy Period**.

## SECTION XV - ESTATES, LEGAL REPRESENTATIVES, SPOUSES AND DOMESTIC PARTNERS

The estates, heirs, legal representatives, assigns, spouses and Domestic Partners of **Insured Persons** shall be considered an **Insured Person** under the **Liability Coverage Parts** but only for a **Claim** arising solely out of their status as such and, in the case of a spouse or **Domestic Partner**, where such **Claim** seeks damages from marital community property, jointly held property or property transferred from the **Insured Person** to the spouse or **Domestic Partner**. No coverage is provided for any wrongful act or omission of an estate, heir, legal representative, assign, spouse or Domestic Partner. All provisions in these General Terms and Conditions and the respective **Liability Coverage Part** applicable to **Loss** incurred by the **Insured Person** shall also apply to covered loss incurred by such estates, heirs, legal representatives, assigns, spouses and Domestic Partners.

## SECTION XVI – TERRITORY AND VALUATION

Litigation Trustee's Exhibit 003

Coverage under any **Liability Coverage Part** shall extend to **Claims** made and **Wrongful Acts** anywhere in the world. All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of **Loss** under this Policy is stated in a currency other than United States dollars, payment under this Policy shall be made in United States dollars at the rate of exchange published in The Wall Street Journal on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **Loss** is due, respectively.

Any **Loss** incurred by a **Company** in a **Foreign Jurisdiction** shall be deemed, at the written direction of the **Named Insured**, a **Loss** of the **Named Insured** payable to the **Named Insured** at the address shown on the Declarations. Any such payment by the Insurer to the **Named Insured** pursuant to this paragraph shall fully discharge the Insurer's liability under this Policy for such **Loss**. Any **Loss** incurred by an **Insured Person** in a **Foreign Jurisdiction** and which is not indemnified or paid by a **Company** shall, to the extent permissible under applicable law, be paid to such **Insured Person** in a jurisdiction mutually acceptable to such **Insured Person** and the Insurer.

## SECTION XVII – SUBROGATION

Solely with respect to any **Liability Coverage Part**, the Insurer shall be subrogated to all of the **Insureds'** rights of recovery regarding any payment of **Loss** under this Policy. The **Insureds** shall do everything reasonably necessary to secure and preserve such rights, including, without limitation, the execution of any documents necessary to enable the Insurer to effectively bring suit in the name of the **Insureds**. The **Insureds** shall do nothing to prejudice the Insurer's position or any rights of recovery. The Insurer shall not subrogate against any **Insured Person**.

Any recoveries by the Insurer, less the cost of obtaining the recovery, will be distributed as follows:

1. to the **Insured** until reimbursed for any **Loss** that they sustain that exceeds the sum of this Policy's and all policies issued specifically excess of this Policy's applicable Limit of Liability and applicable Retention, if any;

2. to the insurer of any other policy specifically excess of this Policy, until they are reimbursed for any **Loss** that they sustain that exceeds the sum of this Policy's applicable Limit of Liability and applicable Retention, if any;

3. then to the Insurer, until the Insurer is reimbursed for the payment made under this Policy; and

4. then to the **Insureds**, until they are reimbursed for their payment of any applicable Retention. In the event the Insurer recovers amounts it paid under this Policy, the Insurer will reinstate the applicable Limit(s) of Liability of this Policy to the extent of such recovery less the Insurer's costs incurred in obtaining such recovery. The Insurer assumes no duty to seek a recovery of any amounts paid under this Policy.

## SECTION XVIII – ALTERATION, ASSIGNMENT AND HEADINGS

By acceptance of this Policy, all **Insureds** and the Insurer agree that this Policy (including the Declarations, **Application**, all purchased Coverage Parts and any written endorsements attached to this Policy) constitute the entire agreement between the parties. The terms, conditions and limitations of this Policy can be waived or changed only by written endorsement hereto.

This Policy and any and all rights hereunder are not assignable without the prior written consent of the Insurer, which consent shall be in the sole and absolute discretion of the Insurer. The titles and headings to the various sections, subsections and endorsements of this Policy and schedule of endorsements attached to this Policy, are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions or existence of such sections, subsections or endorsements.

## SECTION XIX – PAYMENT PRIORITY

If the **Loss** due and owing by the Insurer under a **Liability Coverage Part** exceeds the then-remaining Limit of Liability applicable to such **Loss**, the Insurer shall pay such **Loss**, subject to the applicable Limits of Liability, in the following priority:

1. First, the Insurer shall pay such **Loss** which is **Non-Indemnifiable Loss** incurred by **Insured Persons**;

Litigation Trustee's Exhibit 003

2. Second, the Insurer shall pay all other **Loss** covered under the **Liability Coverage Part**.

Subject to the foregoing paragraph, the Insurer shall, upon receipt of a written request from the **Named Insured**, delay any payment of **Loss** due and owing to the **Company** until such time as the **Named Insured** designates, provided the Insurer's liability with respect to any such delayed **Loss** payment shall not be increased, and shall not include any interest, on account of such delay.

## SECTION XX – CANCELLATION AND NONRENEWAL

The **Named Insured** may cancel this Policy or any **Coverage Part** by mailing or delivering to the Insurer advance written notice of cancellation. The Insurer may cancel this Policy or any **Coverage Part** only for nonpayment of premium. In such event, the Insurer shall mail or deliver to the **Named Insured** written notice of cancellation at least twenty (20) days before the effective date of such cancellation, but such cancellation shall not become effective if the **Insureds** pay such premium in full during such twenty (20) day period. Any notice of cancellation will state the effective date of cancellation. The **Policy Period** will end on that date. If this Policy is cancelled, the Insurer will send to the **Named Insured** the premium refund, computed pro rata. The cancellation will be effective even if the Insurer has not made or offered a premium refund.

If the Insurer decides not to renew this Policy, the Insurer will mail or deliver to the **Named Insured** written notice of non-renewal at least thirty (30) days prior to the end of the **Policy Period**.

## SECTION XXI – AUTHORIZATION CLAUSE

By acceptance of this Policy, the **Named Insured** agrees to act on behalf of the **Insureds** with respect to giving and receiving notices, paying premiums and receiving any return premiums that may become due under this Policy, and agreeing to endorsements, and the **Insureds** agree that the **Named Insured** may act on their behalf with respect to such matters.

## SECTION XXII – BANKRUPTCY

Bankruptcy or insolvency of any **Insured** or of the estate of any **Insured** shall not relieve the Insurer of its obligations nor deprive the **Insured** of its rights or defenses under this Policy.

In the event a liquidation or reorganization proceeding is commenced by or against a **Company** pursuant to the United States Bankruptcy Code, as amended, or any similar foreign, state or local law, the **Insureds** hereby (i) waive and release any automatic stay or injunction which may apply in such proceeding to this Policy or its proceeds under such bankruptcy law, and (ii) agree not to oppose or object to any efforts by the Insurer, the **Company** or any **Insured** to obtain relief from any such stay or injunction.

## SECTION XXIII – ACTION AGAINST INSURER

No action may be taken against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy. No person or entity shall have the right under this Policy to join the Insurer as a party to any action against any **Insured** to determine such **Insured's** liability nor shall the Insurer be impleaded by such **Insured** or legal representative of such **Insured**.

## SECTION XXIV – COMPLIANCE WITH APPLICABLE TRADE AND ECONOMIC SANCTION LAWS

This Policy does not provide coverage that would be in violation of any applicable laws or regulations concerning trade or economic sanctions, including, but not limited to, those administered and enforced by the U.S. Treasury's Office of Foreign Asset Control (OFAC). Payment of **Loss** under this Policy shall be made only if such payment is in full and complete compliance with all economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by OFAC.

## SECTION XXV – PRIOR POLICY LIBERALIZATION

If this Policy is a direct or indirect renewal of a prior policy purchased by the **Named Insured** from the Insurer and if such prior policy was the Insurer's "Private Company Liability Policy" (Form Number ESU 20 00 06 13) ("Prior Policy Form"), then to the extent **Loss** resulting from a **Claim** first made or **Coverage Event** taking place during the **Policy Period** is not covered under this Policy but would be covered if this Policy included the Prior Policy Form, then this Policy is amended to follow and be subject to the broader terms and conditions in the

Litigation Trustee's Exhibit 003

Prior Policy Form, provided this Section XXV shall not amend or apply to: (i) any provision in this Policy addressing limits of liability, retentions or coverages specifically not purchased under this Policy, or (ii) any endorsements to this Policy.

**SECTION XXVI – ALTERNATIVE DISPUTE RESOLUTION**

Only if requested by the **Company**, the Insurer shall submit any dispute, controversy or claim arising out of or relating to this Policy or the breach, termination or invalidity thereof to final and binding arbitration pursuant to such rules and procedures as the parties may agree. If the parties cannot so agree, the arbitration shall be administered in accordance with Bermuda Arbitration Rules. The **Company** shall act on behalf of all **Insureds** in deciding to proceed with arbitration under this clause.

Litigation Trustee's Exhibit 003

**RELM INSURANCE LTD PRIVATE COMPANY MANAGEMENT LIABILITY POLICY**

**DIRECTORS AND OFFICERS LIABILITY COVERAGE PART**

### SECTION I – INSURING AGREEMENTS

**A.   INSURED PERSON LIABILITY COVERAGE**

The Insurer shall pay on behalf of the **Insured Persons** all **Loss** for which the **Insured Persons** are not indemnified by the **Company** and which the **Insured Persons** become legally obligated to pay on account of any **Claim** first made against them during the **Policy Period** or the **Extended Reporting Period**, if exercised, for a **Wrongful Act**.

**B.   COMPANY REIMBURSEMENT COVERAGE**

The Insurer shall pay on behalf of the **Company** all **Loss** for which the **Company** grants indemnification to the **Insured Persons** and which the **Insured Persons** have become legally obligated to pay on account of any **Claim** first made against them during the **Policy Period** or the **Extended Reporting Period**, if exercised, for a **Wrongful Act**.

**C.   COMPANY LIABILITY COVERAGE**

The Insurer shall pay on behalf of the **Company** all **Loss** for which the **Company** becomes legally obligated to pay on account of a **Claim** first made against the **Company** during the **Policy Period** or the **Extended Reporting Period**, if exercised, for a **Wrongful Act**.

**D.   DERIVATIVE DEMAND INVESTIGATION COSTS AND BOOKS AND RECORDS COSTS**

The Insurer shall pay on behalf of the **Company** all **Investigative Costs** on account of all **Securityholder Derivative Demands** and **Books and Records Requests** first received by the **Company** during the **Policy Period** or the **Extended Reporting Period**, if exercised, provided the Insurer's maximum liability for all **Investigative Costs** covered under this Insuring Agreement D shall be the respective Sublimit of Liability set forth in ITEM 8 of the Declarations, which shall be part of and not in addition to the Aggregate Limit of Liability for this Coverage Part.

### SECTION II – COVERAGE ENHANCEMENTS

**A.   PRE-CLAIM EXPENSES**

If the **Insured** gives notice to the Insurer in accordance with Section III.A.3 of the General Terms and Conditions ("Noticed Matter"), and if a **Claim** is subsequently made against an **Insured** arising out of such Noticed Matter, then any **Pre-Claim Expenses** incurred by an **Insured**, in an amount no greater than the lesser of $25,000, or fifty percent (50%) of the applicable retention, shall qualify as **Loss** solely for purposes of exhaustion of the applicable retention subject to the following:

1.   Coverage will apply only to such **Pre-Claim Expenses** incurred on or after the date the **Insured** provides written notice to the Insurer of the Noticed Matter and prior to the time such Noticed Matter becomes a **Claim**. Once the retention has been exhausted, **Pre-Claim Expenses** shall no longer qualify as **Loss** covered under the policy;

2.   This coverage shall not be deemed to waive any of the Insurer's rights hereunder or limit or affect the **Insureds'** rights to receive coverage for **Loss** incurred following the reporting of **Claim**; and

3.   Coverage as provided herein shall not include **Derivative Investigation Costs** or **Claim Expenses** incurred in connection with an **Inquiry** or any investigation of an **Insured**.

**B.   PRE-TENDER COST COVERAGE**

The Insurer's prior written consent shall not be required for any **Claim Expenses** incurred by an **Insured**, on or after the date a **Claim** is first made and received by an **Insured** and within forty-five (45) days prior to the time such **Claim** is first noticed to the Insurer, in an amount no greater than the lesser of twenty- five thousand ($25,000), or fifty percent (50%) of the applicable retention, subject to the following:

1.   Such **Claim Expenses** shall qualify as **Loss** solely for purposes of exhaustion of the applicable retention for the **Claim**. The Insurer shall not be liable for any **Claim Expenses** incurred in excess of the retention to which it has not given prior consent;

Litigation Trustee's Exhibit 003

2. Coverage will apply only to **Claim Expenses** incurred in connection with a **Claim** noticed to the Insurer in accordance with Section III.A.1 of the General Terms and Conditions, above;

3. Coverage as provided herein shall not include **Derivative Investigative Costs**, or **Claim Expenses** incurred in connection with any **Inquiry**; and

4. Solely with respect to the coverage provided under this Section II.B, the **Insured** shall not be required to obtain the Insurer's prior written consent to incur such **Claim Expenses** pursuant to Section VII.F.1 of the General Terms and Conditions.

**C.   EXECUTIVE PROTECTION COVERAGE**

**Loss** shall include the following provided they arise out of a **Claim** against an **Insured Person**:

1. **Asset Protection Costs**; and

2. **Public Relations Costs**;

and such **Costs** shall be provided subject to the respective Sublimits of Liability set forth in ITEM 8 of the Declarations, which shall be part of and not in addition to the Aggregate Limit of Liability for this Coverage Part.

**D.   OUTSIDE POSITION COVERAGE**

Subject to the other terms and conditions applicable to this Coverage Part, Insuring Agreement A and Insuring Agreement B include coverage for **Insured Persons** while serving in an **Outside Position**.  Such coverage shall be specifically excess of any indemnification and insurance available from or provided by the **Outside Entity** in which the **Insured Person** serves in an **Outside Position**.

**E.   ADDITIONAL SIDE A LIMIT OF LIABILITY FOR DIRECTORS AND OFFICERS LIABILITY**

If an Additional Side A Limit of Liability is selected in the Declarations and the Limit of Liability applicable to **Loss** covered under this Coverage Part is exhausted by payment by the Insurer, then the Insurer's liability for any **Loss** covered under Insurance Agreement A which is incurred by any **Protected Executive** shall be the amount set forth in the Declarations, which shall be in addition to and not part of the Aggregate Limit of Liability for this Coverage Part, and in addition to and not part of the Combined Aggregate Limit of Liability set forth in ITEM 2 of the Declarations, provided that this Additional Side A Limit of Liability shall be excess of any other valid and collectible insurance that is specifically excess of this Coverage Part and that covers such **Loss**.

**F.   PUBLIC COMPANY OR INITIAL COIN OFFERING COVERAGE QUOTE**

If during the **Policy Period** the **Named Insured**:

1. gives sixty (60) days prior written notice to the Insurer that a **Company** intends to sell or offer to sell equity  securities that are required to be registered under the Securities Act of 1933, as amended ("Public Transaction"), or intends to pursue a **Coin Offering**; and

2. provides to the Insurer all information requested by the Insurer with respect to the Public Transaction or **Coin Offering**, the Insurer shall provide to the **Company** during the **Policy Period** a quotation for coverage with respect to such sale or offering under the Insurer's then-standard Directors and Officers Liability Insurance Policy for public companies, provided such coverage shall be subject to such terms, conditions, limits, retentions and premium as the Insurer may require in its sole discretion. No coverage is afforded by the Insurer pursuant to any such quotation unless and until the **Named Insured** agrees in writing to the terms,  conditions, limits, retentions and premium described in such quotation, and the Insurer agrees in writing to bind such coverage. This Section II.F shall not impact the Insurer's ability to cancel or non-renew this Policy as provided in Section XX (Cancellation and Nonrenewal) of the General Terms and Conditions.

**SECTION III – DEFINTIONS**

When used in the Directors and Officers Liability Coverage Part, the following terms, whether in the singular or plural, are defined as follows:

**A.   Asset Protection Costs** means reasonable fees, costs and expenses consented to by the Insurer, such consent not to be unreasonably withheld or delayed, and incurred by a **Protected Executive** to oppose an **Asset Protection Order** and to obtain the discharge or revocation of any such **Asset Protection Order** imposed upon such **Protected Executive** during the **Policy Period**.

Litigation Trustee's Exhibit 003

**B.**   **Asset Protection Order** means any order issued by an **Enforcement Unit** to seize or enjoin the sale or transfer of an **Protected Executive's** personal assets or real property first received by such **Protected Executive** during the **Policy Period**.

**C.**   **Books and Records Costs** means any reasonable fees and expenses incurred by the **Company** in response to a **Books and Records Request**, other than wages, salaries, fees, benefits or overhead associated with any **Insured**.

**D.**   **Books and Records Request** means any written request by or on behalf of a shareholder of the **Company** upon the Board of Directors of the **Company** to inspect the books and records of such **Company** pursuant to Section 220 of the Delaware General Corporation Law or other similar statute.

**E.**   **Claim** means:

1. a written demand against any **Insured** for monetary damages or non-monetary (including injunctive) relief, including a demand that the **Insured** toll or waive a statute of limitations or a demand or request for arbitration, mediation or other alternative dispute resolution, which shall be deemed first made upon the **Insured's** receipt of the demand;

2. a civil proceeding against any **Insured**, commenced by and which shall be deemed first made upon the service upon the **Insured** of a complaint or similar pleading;

3. a criminal proceeding against any **Insured** commenced by and which shall be deemed first made upon the **Insured's** arrest, the return of an indictment or information, or receipt of a notice of charges or similar document;

4. a formal administrative or regulatory proceeding against any **Insured** commenced by and which shall be deemed first made upon the **Insured's** receipt of a notice of charges or similar document; or the functional or foreign equivalent of paragraphs 1-4 above, including any appeal therefrom; provided that a **Claim** under paragraphs 1-4 above, shall not provide coverage for any investigation of an **Insured**;

5. solely with respect to Insuring Agreements A and B, **Claim** means any **Inquiry**, provided that the **Inquiry** shall be deemed a **Claim** only if the **Insured** elects to provide written notice of such **Inquiry** to the Insurer pursuant to Section III.A.2 of the General Terms and Conditions Part of the Policy and shall be deemed first made when it is noticed to the Insurer;

6. solely with respect to Insuring Agreement D, **Claim** means a **Securityholder Derivative Demand** or **Books and Records Request**, which shall be deemed first made upon the **Insured's** receipt of such **Securityholder Derivative Demand** or **Books and Records Request**;

7. the arrest or confinement of any **Insured Person** to: (i) a specified residence; or (ii) a secure custodial premises operated by or on behalf of any **Enforcement Unit**, if such arrest or confinement is in connection with the business of any **Company**, which shall be deemed first made upon the **Insured Person's** receipt of the warrant for arrest or notice of confinement; or

8. an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**, which shall be deemed first made upon the **Insured Person's** receipt of the official request or warrant.

**F.**   **Coin Offering** means

1. Any actual or anticipated sale of tokens by the company

   a)  In the form of warrant purchase agreements, or
   b)  For compensation to employees, directors, advisors, and vendors or strategic partners; or
   c)  To the public,
   d)  Via an automated service, or

2. Any sale of tokens to the public to be an initial or secondary coin offering by an authorized regulator, such as the SEC or foreign equivalent.

**G.**   **Compensation Clawback Costs** means the reasonable fees and expenses (including the premium or origination fee for a loan or bond, without any obligation of the Insurer to apply for or furnish such loan or bond) incurred by an **Insured Person** to investigate or defend any **Claim** pursuant to, or to facilitate the return of amounts required to be paid by such **Insured Person** pursuant to, Section 304(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of

Litigation Trustee's Exhibit 003

the Dodd-Frank Act of 2010, or any rules, regulations or policies pursuant to such Sections; provided that **Compensation Clawback Costs** do not include the payment, return, reimbursement, disgorgement or restitution of any amounts requested or required to be paid by such **Insured Person** pursuant to such Sections, rules, regulations or policies.

**H.**   **Controlling Person** means an **Insured Person** who allegedly controls the **Company** through stock ownership or pursuant to an agreement, including any such **Insured Person** described in Section 15 of the Securities Act of 1933, Section 20 of the Securities Exchange Act of 1934, or any similar federal, state or local rule or regulation.

**I.**   **Derivative Suit** means any lawsuit by a securityholder of a **Company** brought derivatively on behalf of such **Company** against an **Insured Person** or the **Company**, including against the **Company** as a nominal defendant.

**J.**   **Freedom Costs** means reasonable fees, costs, and expenses consented to by the Insurer, such consent not to be unreasonably withheld or delayed, and incurred by a **Protected Executive** to seek their lawful release in connection with a **Freedom Event**. **Freedom Costs** shall include the premium for a bond or similar instrument (provided the Insurer shall have no obligation to apply for or furnish such bond) to guarantee any contingent obligation ordered by a court that are incurred or required outside the United States of America during the **Policy Period**, if such premiums arise out of an actual or alleged **Wrongful Act** of the **Protected Executive**.

**K.**   **Freedom Event** means the arrest or confinement of a **Protected Executive** in their capacity, by or on behalf of a governmental law Enforcement Unit to a specific residence or secure custodial premises.

**L.**   **Inquiry** means:

1.   a civil, criminal, administrative, or regulatory investigation or inquiry of an **Insured Person** by an **Enforcement Unit**, commenced by the **Insured Person's** receipt of a subpoena, Wells Notice, target letter (within the meaning of Title 9, §11.151 of the U.S. Attorney's Manual), formal order of investigation, civil investigative demand, notice of charges, order to show cause, search warrant, S.E.C. Form 1661 or 1662, or other similar document, or the functional or foreign equivalent thereof;

2.   a written request or demand of an **Insured Person** by an **Enforcement Unit** for an interview, meeting, sworn testimony or documents in connection with the business of the **Company**, or in connection with such **Insured Person** in his or her capacity as such;

3.   a written request or demand of an **Insured Person** by a **Company** (including its board of directors or any committee of its board of directors) for an interview, meeting, sworn testimony or documents in connection with: (i) a **Security Holder Derivative Demand**, or (ii) an investigation of a **Company** by an **Enforcement Unit**;

**Inquiry** shall not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, industry sweep, including any request for mandatory information from an **Enforcement Unit**, conducted in a **Company's** and/or **Enforcement Unit's** normal review or compliance process or any subpoena received by an **Insured** as a non-party witness.

**M.**   **Insured** means the **Insured Persons** and, solely with respect to Insuring Agreement B, Insuring Agreement C and Insuring Agreement D, the **Company**.

**N.**   **Insured Persons** means:

1.   any one or more natural persons who were, now are or shall become a duly elected or appointed director (including a de facto director and shadow director), trustee (other than a bankruptcy or litigation trustee), governor, **Manager**, officer, in-house general counsel, risk manager, controller, advisory director, or member of a duly constituted committee or board of the **Company** or their functional or foreign equivalent;

2.   any one or more natural persons not described in paragraph 1 above who were, now are or shall become employees of the **Company**, provided that such employees shall not be considered **Insured Persons** for purposes of the Exclusions in Section IV of this Coverage Part; and

3.   any one or more natural persons described in paragraph 1 above while serving in an **Outside Position**.

**O.**   **Investigative Costs** means **Securityholder Derivative Demand Fees** and all **Books and Records Costs**.

**P.**   **JOBS Act Claim** means any **Claim**:

1.   based upon or arising from the general solicitation or advertising of private placements by or on behalf of the **Named Insured** as set forth in Title II, Access to Capital for Job Creators, of the Jumpstart Our Business Startups Act ("JOBS Act"), or any rules or regulations promulgated thereunder;

Litigation Trustee's Exhibit 003

2. based upon or arising from any offering, sale or purchase of securities that qualify for a Securities Act registration exemption as set forth in Title III, Crowdfunding, or Title IV, Small Company Capital Formation, of the JOBS Act, or any rules, or regulations promulgated thereunder.

**Q.** **Loss** means the total amount the **Insureds** become legally obligated to pay on account of a **Claim** made against them, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any award of pre-judgment and post-judgment interest with respect to covered damages, settlements, and **Claim Expenses**.

**Loss** shall include:

1. **Compensation Clawback Costs**, **UK Corporate Manslaughter Act Costs** and **Freedom Costs;**

2. plaintiffs' attorney fees;

3. solely with respect to Section II.C, **Asset Protection Costs** and **Public Relations Costs**;

4. taxes imposed on a **Company** for which an **Insured Person** is legally obligated to pay solely by reason of the **Company's Financial Impairment**;

5. civil fines or civil penalties assessed against an **Insured Person** for any unintentional and non-willful violation of law, including without limitation pursuant to Section 308 of the Sarbanes-Oxley Act of 2002 and Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. §78dd-2(g)(2)(B), and where insurable; and

6. Solely with respect to Insuring Agreement D, **Investigative Costs**;

The insurability of such punitive, exemplary or multiple damages, taxes, civil fines or penalties shall be determined under the internal laws of any applicable jurisdiction most favorable to the **Insureds**, including without limitation the jurisdiction in which the **Company**, the **Insured Persons**, the Insurer, this Policy or such **Claim** is located. The Insurer shall not assert that (i) **Loss** incurred by an **Insured** is uninsurable by reason of the **Insured's** actual or alleged violation of Section 11, 12 or 15 of the Securities Act of 1933, as amended, or (ii) **Compensation Clawback Costs** are uninsurable.

**Loss** except with respect to **Claim Expenses**, does not include:

i. any amount not indemnified by the **Company** for which the **Insureds** are absolved from payment by reason of any covenant, agreement or court order;

ii. taxes, fines or penalties imposed by law, other than the taxes or civil fines or civil penalties expressly referenced above;

iii. solely with respect to Insuring Agreements B and C, any amount that represents or is substantially equivalent to an increase in the consideration paid or proposed to be paid by a **Company** in connection with its purchase of any securities or assets;

iv. any amount incurred by the **Insureds** to comply with any injunctive or other non-monetary relief or for any agreement to provide such relief;

v. matters uninsurable under the law pursuant to which this Policy is construed; or

vi. **Clean-Up Costs**.

**R.** **Outside Entity** means any of the following organizations, provided such organization is not included in the definition of **Company**:

1. any organization chartered and operated as a not-for-profit organization;

2. any other organization specifically included as an **Outside Entity** by endorsement to this Policy.

**S.** **Outside Position** means:

1. a position described in Section III.M.1 above, or

2. any other postion held by an **Insured Person** or employee of the **Company**;

in an **Outside Entity**, if service in such position is with the knowledge and consent of, at the direction or request of, or part of the duties regularly assigned to the **Insured Person** by, the **Company**.

**T.** **Public Relations Costs** means the reasonable fees, costs, and other expenses of a public relations consultant

Litigation Trustee's Exhibit 003

engaged by the **Company** and approved by the Insurer, such approval not to be unreasonably withheld, to mitigate reputational harm to such **Company** as a result of an **Publication Event.**

**U.**   **Pre-Claim Expenses** means any reasonable fees (including attorneys' fees, experts' fees, document production costs and e-discovery costs) and expenses (other than wages, salaries, fees or benefits of any **Insured Person**) incurred by an **Insured** in the investigation, defense, or appeal of a Noticed Matter.

**V.**   **Protected Executive** means any **Insured Person** as defined in Section III.M.1.

**W.**   **Publication Event** means any negative statement about a **Protected Executive** made during the **Policy Period** in any publication by an individual authorized to speak on behalf of any **Enforcement Unit.**

**X.**   **Securityholder Derivative Demand** means:

1.   any written demand by a securityholder of a **Company** upon the Board of Directors or Board of Managers of such **Company** to bring a civil proceeding in a court of law against an **Insured Person** for a **Wrongful Act**; or

2.   any lawsuit brought by a securityholder of a **Company** derivatively on behalf of such **Company** against an **Insured Person** for a **Wrongful Act** without first making a demand as described in subparagraph 1 above.

**Y.**   **Securityholder Derivative Demand Fees** means all reasonable fees (including attorney's fees and expert's fees) and expenses (other than wages, salaries, fees or benefits of the directors, officers or employees of the **Company**) incurred by the **Company** (including its Board of Directors or any committee of its Board of Directors) to (i) investigate or evaluate on behalf of the **Company** whether it is in the best interest of the **Company** to prosecute the **Claims** alleged in a **Securityholder Derivative Demand**, or (ii) seek the dismissal of a derivative lawsuit on behalf of the **Company** against **Insured Persons**.

**Z.**   **Selling Shareholder** means an **Insured Person** in his or her capacity as an attempted or actual seller of securities issued by the **Company**.

**AA.**   **UK Corporate Manslaughter Act Costs** means reasonable fees, costs and expenses consented to by the Insurer, such consent not to be unreasonably withheld or delayed, and incurred by a **Protected Executive** in an investigation, defense and/or appeal of a **Claim** first made against a **Company** for violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007, or any similar criminal statute.

**AA.**   **Wrongful Act** means:

1.   with respect to the **Insured Persons**:

a)   any actual or alleged error, misstatement, misleading statement, neglect, breach of duty, omission or act by the **Insured Persons**:

(i)   in their capacity as such;

(ii)   in their capacity as a **Controlling Person** or as a **Selling Shareholder**; or

(iii)   in an **Outside Position** capacity;

b)   any matter claimed against them by reason of their serving in such capacity;

provided, however, that an **Inquiry** of an **Insured Person** shall be treated as a **Claim** for a **Wrongful Act** whether or not a **Wrongful Act** is alleged;

2.   solely with respect to Insuring Agreement C, any actual or alleged act, error, misstatement, misleading statement, neglect, breach of duty, omission or act by the **Company**; provided, however, that a **Derivative Suit** brought against a **Company** as a nominal defendant shall be treated as a **Claim** for a **Wrongful Act** whether or not a **Wrongful Act** is alleged.

## SECTION IV - EXCLUSIONS

The Insurer shall not be liable under this Coverage Part to pay any **Loss** on account of any **Claim** made against any **Insured**:

## EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS

**A.**   **PRIOR NOTICE**

based upon, arising out of, or attributable to any fact, circumstance or **Wrongful Acts** which have been the subject of

RILCWF011A10120                                                                                                                    DOC|6

Litigation Trustee's Exhibit 003

any written notice given prior to inception of this Policy and accepted under any prior directors and officers liability or comparable insurance policy or coverage part.

**B.    PENDING OR PRIOR LITIGATION**

based upon, arising out of, or attributable to any **Claim** against any **Insured** which was pending on or existed prior to the respective Pending or Prior Date for this Coverage Part, set forth in the Coverage Schedule in ITEM 8 of the Declarations, or the same or substantially the same fact, circumstance or **Wrongful Acts** alleged in or underlying such prior **Claim**.

**C.    CONDUCT**

based upon, arising out of or attributable to:

1.    any deliberately fraudulent act or omission, or any willful violation of any law, statute or regulation, committed by such **Insured**; or

2.    such **Insured** gaining any personal financial profit, remuneration or financial advantage to which such **Insured** was not legally entitled,

if evidenced by a final, non-appealable adjudication adverse to such **Insured** in the underlying proceeding provided that:

i.    section IV.C.1 above, shall not apply to **Compensation Clawback Costs**, or **Loss** in connection with any violations of Sections 11, 12, or 15 of the Securities Act of 1933, as amended;

ii.   with respect to section IV.C.2 above, any acts or omissions which are treated as criminal violations in a foreign jurisdiction that are not treated as criminal violations in the United States of America, the imposition of a criminal fine or other criminal sanction in such foreign jurisdiction will not, by itself, be conclusive proof that deliberately criminal or fraudulent acts occurred;

For purposes of determining the applicability of this exclusion, the **Wrongful Act**, knowledge of, or facts pertaining to any **Insured Person** shall not be imputed to any other **Insured Person** and only the **Wrongful Acts**, knowledge of or facts pertaining to the chief executive officer or chief financial officer of the **Named Insured** shall be imputed to a **Company**.

**D.    BODILY INJURY/PROPERTY DAMAGE**

for any actual or alleged bodily injury, sickness, disease or death, mental anguish, emotional distress or humiliation of any person or damage to or destruction of any tangible property including loss of use of such damaged or destroyed property; provided this exclusion shall not apply to: (i) any allegations of mental anguish, emotional distress or humiliation in a **Claim** against **Insured Persons** for employment- related **Wrongful Acts**, (ii) **Claim Expenses** incurred by a **Protected Executive** in connection with a **Claim** against such **Protected Executive** for a violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any other jurisdiction, (iii) a **Claim** covered under Insuring Agreement A, or (iv) a **Claim** by one or more shareholders of the **Company** in their capacity as such.

**E.    POLLUTION**

for:

1.    the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** at any time; or

2.    any request, demand, or order, or statutory or regulatory requirement, that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **Pollutants**;

provided this exclusion shall not apply to Insuring Agreement A, or a **Claim** by one or more shareholders of the **Company** in their capacity as such.

**F.    INSURED VS. INSURED**

brought or maintained by or on behalf of:

1.    an **Insured Person** in any capacity;

RILCWF011A10120                                                                                                    DOC|7

2. a **Company** or **Outside Entity**; or

3. a shareholder of an **Insured Entity** or **Outside Entity**, whether directly or derivatively, unless such **Claim** is brought and maintained without the active assistance or active participation of a **Company**, **Outside Entity** or any **Insured Person**, or if the only such assistance or participation by such **Company**, **Outside Entity** or **Insured Person** is solely pursuant to, or in compliance with, a subpoena or similar legal process; provided this Exclusion shall not apply to:

A. **Claim Expenses** covered under Insuring Agreement A;

B. a **Claim** by an **Insured Person** who has not served as an **Insured Person** for at least two (2) years prior to the date such **Claim** is first made and who maintains such **Claim** without the active assistance or active participation of the **Company** or **Outside Entity**, or any other **Insured Person** who is serving or has served as an **Insured Person** within such two (2) year period;

C. a **Claim** by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver, conservator, liquidator, similar official or creditors committee for such **Company** or **Outside Entity**, or any assignee of such trustee, examiner, receiver, conservator, liquidator, similar official or creditors committee;

D. a **Claim** maintained in any non-common law jurisdiction outside the United States;

E. a **Claim** against **Insured Persons** for an employment-related **Wrongful Act**;

F. a **Claim** by any **Insured Person** for contribution or indemnity, if the **Claim** directly results from another **Claim** covered under this Coverage Part;

G. a **Claim** brought against an **Insured Person** by a whistleblower pursuant to any federal, state, foreign or local whistleblower law; or

H. **Compensation Clawback Costs**.

**G.   ERISA**

for an actual or alleged violation of the responsibilities, obligations or duties imposed by **ERISA** or similar provisions of any federal, state or local statutory law or common law with respect to any pension, profit sharing, health and welfare or other employee benefit plan or trust established or maintained for the purpose of providing benefits to employees of the **Company** or an **Outside Entity**.

**H.   SECURITIES**

based upon, arising out of or attributable to (i) the actual purchase or sale, or offer or solicitation of an offer to purchase or sell, any public equity securities, including **Coin Offerings**, by the **Company** or an **Outside Entity**, or (ii) the actual or alleged violation of any federal, state, local or foreign law relating to public equity securities; provided this exclusion shall not apply to any:

1. **Claim** based upon, arising out of or attributable to the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities not required to be registered under the Securities Act of 1933, as amended;

2. **Claim** based upon, arising out of or attributable to the failure of the **Company** or an **Outside Entity** to undertake or complete a public offering of securities, including any "roadshow" disclosures or other activities in connection with such failure; or

3. **Jobs Act Claim**.

**I.   WAGE AND HOUR**

based upon, arising out of, attributable to, in whole or in part, or directly or indirectly resulting from or in consequence of, any actual or alleged violation of any of the responsibilities, obligations or duties imposed by any **Wage and Hour Law**; provided that notwithstanding anything in this Policy to the contrary it shall be the duty of the **Insureds** and not the duty of the Insurer to defend any **Claim** which is in part excluded from coverage pursuant to this Exclusion I; provided this exclusion shall not apply to a **Claim** by one or more shareholders of the **Company** in their capacity as such.

**J.   MONEY LAUNDERING**

RILCWF011A10120                                                                                                                    DOC|8

based upon, arising out of, attributable to, in whole or in part, or directly or indirectly resulting from or in consequence of, the concealment, disguise, conversion or transfer of Criminal Property as defined in S.340 of the Proceeds of Crime Act 2002, or with any act, error or omission facilitating the acquisition, retention, use or control of such Criminal Property.

**K.   OTHER VIOLATIONS OF LAW**

for any actual or alleged violation of the any of the responsibilities, obligations or duties imposed by:

1.   the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, the Occupational Safety and Health Act of 1970, and as amended, and the National Labor Relations Act, as amended, or any similar provisions of any federal, state, local or foreign statutory or common law;

2.   any law governing workers' compensation, unemployment insurance, unemployment compensation, social security, retirement benefits, disability benefits, or any similar provisions of any federal, state, local or foreign statutory or common law.

**COMPANY EXCLUSIONS**

Solely with respect to Insuring Agreement C:

**L.   CONTRACT**

based upon, arising out of, or attributable to any actual or alleged liability of the **Company** under any written contract or agreement, except to the extent that the **Company** would have been liable in the absence of such contract or agreement.

**M.   PERSONAL INJURY**

based upon, arising out of, or attributable to any **Personal injury**, provided this exclusion shall not apply to a **Claim** by one or more shareholders of the **Company** in their capacity as such.

**N.   PROFESSIONAL SERVICES**

For a **Wrongful Act** committed or allegedly committed in the rendering or failure to render professional services to others (including but not limited to providing opinions, commentary or information related thereto) either gratuitously or for a fee.

**O.   ANTITRUST**

based upon, arising out of, or attributable to any violation of the Sherman Anti-Trust Act, the Federal Trade Commission Act, the Consumer Protection Act, the Clayton Act (or any amendments thereto), or any other federal, state, or local law, or any similar provision of any federal, state, or local law anywhere in the world, relating to any anti-trust, price fixing, price discrimination, predatory pricing, restraint of trade, or monopolization activity; provided this exclusion shall not apply to any **Claim** by one or more shareholders of the **Company** in their capacity as such.

**P.   INTELLECTUAL PROPERTY/CONFIDENTIAL INFORMATION**

based upon, arising out of or attributable to any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress or service mark, or the actual or alleged misappropriation of ideas or trade secrets or the unauthorized disclosure of or access to confidential information; provided this exclusion shall not apply to any **Claim** by one or more shareholders of the **Company** in their capacity as such.

**Q.   PRODUCT DEFECT**

based upon, arising out of, or attributable to, any:

1.   violation of the Federal Trade Commission Act or Consumer Protection Act or any similar federal, state or local law; or

2.   bodily injury, malfunction or performance failure;

related to any goods or products manufactured, produced, processed, packaged, sold, marketed, distributed, advertised (including but not limited to falsely advertised, or misrepresented in advertising) or developed by or on behalf of any **Company**; provided however this exclusion shall not apply to any **Claim**

Litigation Trustee's Exhibit 003

brought by one or more shareholders of the **Company** in their capacitiy as such.

**R.    EMPLOYMENT**

based upon, arising out of or attributable to any employment-related **Wrongful Acts**; provided however this exclusion shall not apply to any **Claim** brought by one or more shareholders of the **Company** in their capacity as such.

For the purpose of determining the applicability of any Exclusion set forth in this Section IV, the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and under Insuring Agreement C only the **Wrongful Act** or knowledge of the chief executive officer or chief financial officer of a **Company** shall be imputed to a **Company**.

Litigation Trustee's Exhibit 003

**Endorsement No:** 01
**Insured Name:** Compute North Holdings, Inc.
**Policy Number:** RILPDOA5992022
**Policy Period:** September 22, 2022 to September 22, 2023
**Insurer:** Relm Insurance Ltd.
**Endorsement Effective Date:** September 22, 2022

## SANCTION LIMITATION AND EXCLUSION CLAUSE

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**.

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any **Claim** or provide any benefit hereunder to the extent that the provision of such cover, payment of such **Claim** or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Litigation Trustee's Exhibit 003

**Endorsement No:** 02
**Insured Name:** Compute North Holdings, Inc.
**Policy Number:** RILPDOA5992022
**Policy Period:** September 22, 2022 to September 22,
**Insurer:** Relm Insurance Ltd.
**Endorsement Effective Date:** September 22, 2022

# PREMIUM PAYMENT CLAUSE - 30 Days

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

Notwithstanding any provision to the contrary within this contract or any endorsement hereto, in respect of non-payment of premium only the following clause will apply.

The **Insured** undertakes that premium will be paid in full to the Underwriters within 30 days of inception of this contract.

If the premium due under this contract has not been so paid to Underwriters by the 30th day from the inception of this contract (and, in respect of installment premiums, by the date they are due), the Underwriters shall have the right to cancel this contract by notifying the **Insured** via the broker in writing. In the event of cancellation, premium is due to Underwriters on a pro rata basis for the period that Underwriters are on risk but the full contract premium shall be payable to Insurers in the event of a **loss** or occurrence prior to the date of termination which gives rise to a valid **claim** under this contract.

It is agreed that Underwriters shall give not less than 15 days prior notice of cancellation to the **Insured** via the broker. If premium due is paid in full to Underwriters before the notice period expires, notice of cancellation shall automatically be revoked. If not, the contract shall automatically terminate at the end of the notice period.

If any provision of this clause is found by any court or administrative body of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability will not affect the other provisions of this clause which will remain in full force and effect.

Notwithstanding the above, once the premium has been paid in full, the premium shall be fully earned at inception.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Litigation Trustee's Exhibit 003

**Endorsement No:** 03
**Insured Name:** Compute North Holdings, Inc.
**Policy Number:** RILPDOA5992022
**Policy Period:** September 22, 2022 to September 22, 2023
**Insurer:** Relm Insurance Ltd.
**Endorsement Effective Date:** September 22, 2022

## TERRORISM, WAR AND CIVIL WAR EXCLUSION CLAUSE

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

Notwithstanding anything to the contrary contained herein this Policy does not cover **Loss** or Damage directly or indirectly occasioned by, happening through or in consequence of acts of terrorism, war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

RILCWF419A10120

Litigation Trustee's Exhibit 003

Design. Integrate. Achieve.

# ESIS ProClaim Claim Reporting Instructions

All claims which might reasonably be expected to fall within the coverage provided by your Insurance Policy should be immediately reported to the claim administrator, ESIS ProClaim.

The preferred method for reporting such claims or incidents is via email to:

relmclaims@esis.com

Claims or incidents can alternatively be reported to ESIS ProClaim via Toll-Free Number @ 1-866-789-3747 or Fax to 1-866-365-8591 or via U.S. Mail to:

ESIS ProClaim
New Claims Reporting
Attn: Relm Claim Team
P.O. Box 5129
Scranton, PA 18505-0568

After hours Cyber claims can be reported, during the hours of 6:00pm US EST and 6:00am US EST to:

833-63-CYBER (29237)
CWCyber@C-WLAW.COM

John Loyal, Esquire
Cipriani & Werner
450 Sentry Pkwy, Suite 200
Blue Bell, PA 19422

To assist us in expediting the handling of the claim, along with the First Notice of Loss please ensure to provide the following information when reporting:

1. Named Insured
2. Policy Number
3. Insured Contact

The ESIS team will review all claims notices upon receipt and within 24 hours you will receive an electronic acknowledgement of the claim that includes the claim number, the assigned claim handler, and their direct contact information.

**Signature:** ~Trevor~

**Email:** trevor@relminsurance.com

1

Litigation Trustee's Exhibit 003

**Endorsement No:** 05
**Insured Name:** Compute North Holdings, Inc.
**Policy Number:** RILPDOA5992023
**Policy Period:** September 22, 2023 to September 22, 2029
**Insurer:** Relm Insurance Ltd.
**Effective Date:** September 22, 2023

## RUN-OFF AMENDMENT ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. READ IT CAREFULLY.**

This portion of the endorsement modifies coverage under the Directors & Officers Coverage Part.

In accordance with the terms of the Policy it is agreed that coverage granted by this policy, and in accordance with the terms thereof, is extended in respect of any **Claim(s)** that may be made against the **Insured** until September 22, 2029 at 12:01 local time, but only with respect to any **wrongful acts** committed or alleged to have been committed on or before September 22, 2023 at 12:01 local time.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Litigation Trustee's Exhibit 003